**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

---

THE OSAGE TRIBAL COUNCIL, on
behalf of the OSAGE TRIBE OF
INDIANS,

     Petitioner,

v.

UNITED STATES DEPARTMENT
OF LABOR,

     Respondent,

CHRIS WHITE,

     Intervenor.

No. 97-9564

---

**APPEAL FROM DECISION OF THE**
**ADMINISTRATIVE REVIEW BOARD, U.S. DEPARTMENT OF LABOR**
**(A.R.B. No. 96-137)**

---

F. Browning Pipestem (and Dena L. Silliman with him on the briefs), F.
Browning Pipestem & Associates, Norman, Oklahoma, for Petitioner, the Osage
Tribal Council.

Ellen L. Beard, Senior Appellate Attorney (Marvin Krislov, Deputy Solicitor for
National Operations, and Allen H. Feldman, Associate Solicitor for Special
Appellate and Supreme Court Litigation, with her on the brief), U.S. Department
of Labor, Washington, D.C., for Respondent, U.S. Department of Labor.

John T. Edwards, Oklahoma City, Oklahoma, for Intervenor, Chris White.

---

Before **ANDERSON** , **HENRY** , and **MURPHY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

---

The Osage Tribal Council (the Council) petitions for review of an order by the Administrative Review Board of the Department of Labor in a proceeding under the employee protection provisions of the Safe Drinking Water Act (SDWA), 42 U.S.C. § 300j-9(i). The Board's order rejected the Council's assertion that it was entitled to tribal immunity, found for the complainant, Chris White, and remanded the matter to the administrative law judge for a determination of the amount of back pay, attorneys' fees, and costs to which Mr. White was entitled. We hold that the Board's denial of sovereign immunity is reviewable under the collateral order doctrine, affirm the Board's determination that the SDWA abrogates tribal immunity, and remand to the Board for further proceedings. We do not address the intervenor's arguments as the order is not yet final and thus not reviewable as to his claims.

## I. BACKGROUND

Chris White was employed by the Council as an environmental inspector. He was directly supervised by both Council and Environmental Protection Agency

(EPA) employees, and was responsible for monitoring the Council's compliance with the underground injection control provisions of the SDWA. His duties included filing violation reports, which could and did trigger SDWA enforcement actions from the regional EPA office.

In late spring of 1994, the EPA directed its inspectors, including Mr. White, to begin monitoring compliance with the SDWA's surface pollution provisions. Inspectors were directed to send copies of any reports of surface pollution violations on the Osage mineral estate to the local Bureau of Indian Affairs (BIA) agency offices in addition to the regional EPA office. Testimony of Mr. White's supervisors established that he performed these duties exceptionally.

In February, 1995, although no one had ever complained before, Mr. White's immediate tribal supervisor, Patricia Beasley, was notified of certain complaints about him from BIA employees and mineral lease operators. Later that month, the joint Council-EPA committee met to discuss the complaints. On March 15, this committee issued a memorandum to Ms. Beasley directing her to fire Mr. White. The memorandum referenced various specific complaints against White by oil leaseholders and cited "serious misconduct" and "disloyalty" as the reasons for his termination.

Mr. White alleged, however, that the Council terminated him for engaging

in acts protected under the SDWA – filing environmental violation reports – because the Council was concerned the reports would affect oil production on the Osage mineral estate. The Council responded that Mr. White only filed his suit for political reasons, owing to the political upheaval and infighting between two factions, the Council (the traditional governing body) and the Osage National Council (a recently formed competitor).

After Mr. White was terminated, he had a hearing before his supervisors, who upheld his termination on April 6, 1995. He did not appeal the decision to the joint Council-EPA Committee. Instead, Mr. White filed a complaint of discrimination with the Secretary of Labor ("the Secretary") under the SDWA's whistle blower employee protection provisions. See 42 U.S.C. § 300j-9(i). In response, the Council argued that the SDWA had not explicitly abrogated its tribal sovereign immunity, and therefore the Council could not be held subject to the SDWA's enforcement provisions.

Following a hearing, the Administrative Law Judge (ALJ) issued a recommended order that rejected the Council's immunity claim and found in favor of White. On administrative appeal, the Administrative Review Board rejected the ALJ's recommendation of punitive damages but otherwise adopted the order on all issues, and remanded to the ALJ for a determination of damages and costs.

On October 7, 1997, the Council petitioned for review of the Board's

4

decision. We have jurisdiction to review orders of the Secretary of Labor under 42 U.S.C. § 300j-9(i)(3)(A). Under Fed. R. App. P. 15(a), the Department of Labor is the respondent on appeal. The original complainant, Mr. White, appears as an intervener. See Fed. R. App. P. 15(d).

On October 27, the Secretary filed a motion to dismiss on the grounds that the Board's action below did not yet constitute a final appealable order. The ALJ returned its pending administrative case to the Administrative Review Board pending the outcome of the appeal in this case.

## II. Discussion

*A. Whether the Secretary's Ruling is Reviewable on Appeal as a Collateral Order*

We must first address the threshold question of whether the Secretary's order rejecting the Council's sovereign immunity defense with respect to the SDWA is reviewable notwithstanding lack of a final judgment. As the Supreme Court has noted, "at least in the absence of an appealable collateral order, the federal courts may exercise jurisdiction only over a final [administrative agency] order." Bell v. New Jersey, 461 U.S. 773, 778-79 (1983) (internal citations omitted). Here, however, the Council argues that its petition is just such an immediately appealable collateral order.

In limited circumstances, the collateral order doctrine allows interlocutory

5

appeal of an order that does not actually end the litigation. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). As the Supreme Court has explained, "[i]n Cohen, we held that §1291 permits appeals not only from a final decision by which a district court disassociates itself from a case, but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1208 (1995). An order falls within the collateral order doctrine if (1) it conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment. See United States v. Leon, 132 F.3d 583, 587 (10th Cir. 1997).

The Eleventh Circuit has held that the denial of a tribal immunity claim satisfies the collateral order doctrine. See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida, 63 F.3d 1030, 1050 (11th Cir. 1995). The Tamiami court analogized the tribal immunity claim to the Supreme Court's treatment of a qualified immunity claim in Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). As the circuit court noted, in Mitchell, the Supreme Court treated the third Cohen factor – effective unreviewability on appeal – as predominant. Id. The Mitchell Court held that a denial of qualified immunity was immediately reviewable as a collateral order because qualified immunity shared the essential attribute of

6

absolute immunity: "The entitlement is an <u>immunity from suit</u> rather than a mere <u>defense to liability</u>; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell</u>, 472 at 526 (emphasis added). Thus, the Supreme Court held, "the reasoning that underlies the immediate appealability of an order denying absolute immunity indicate to us that the denial of qualified immunity should be similarly appealable." <u>Id.</u> at 526-27. Following suit, the Eleventh Circuit in <u>Tamiami</u> held that because tribal immunity similarly guarantees immunity against suit, the district court's denial of tribal immunity was similarly immediately appealable under the collateral order doctrine. <u>Id.</u>

Following the Supreme Court's guidance in <u>Mitchell</u>, we join the Eleventh Circuit in holding that the denial of tribal immunity is an immediately appealable collateral order. As above, the major part of the inquiry is whether the third <u>Cohen</u> factor is met, i.e., whether the order is effectively unreviewable on appeal. As in <u>Mitchell</u>, that inquiry focuses on whether the immunity at issue shares the essential attribute of absolute immunity, that is, immunity from suit. The Supreme Court has very clearly held that tribal immunity does indeed guarantee immunity from suit, and not merely a defense to liability. <u>See</u> <u>Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.</u>, 118 S. Ct. 1700, 1704 (1998). Thus, tribal immunity is of the sort that is immediately appealable.

Here, however, the Council has already borne much of the burden of "trial"

7

in the administrative proceeding, and the Secretary argues thus that, in effect, the Council has nothing left to lose and the third Cohen factor is not met. We disagree. Although, ideally, the question of the Council's immunity should have been decided earlier in the administrative process such that Council would not have borne any possibly erroneous trial burden, here the Council still faces the burden of calculating damages in the proceeding on remand. Were this case erroneously permitted to proceed further, the Council's absolute entitlement to immunity from suit would still be effectively lost. Thus, the third Cohen factor is satisfied.

Yet, as in Mitchell, for the order to be immediately appealable under the collateral order doctrine, it must also satisfy two additional criteria: the remaining first and second Cohen factors. Here, that inquiry is easy. The first Cohen factor is met because, as the Secretary conceded, the question of tribal sovereignty is conclusive of whether the tribe must bear the burden of the administrative proceeding. The second Cohen factor is also met because the question of tribal sovereignty is distinct from the underlying merits of whether the Council violated Mr. White's whistle blower rights under the SDWA.

Thus, we hold that the Secretary's order as to sovereign immunity may be immediately appealed under the collateral order doctrine, and deny the Secretary's motion to dismiss the petition for review. At the same time, we do not reach the

8

merits of the order, as the remainder of the order is not subject to the collateral order doctrine, is not yet final, and is thus not reviewable. Accordingly, we do not address the intervenor's arguments as to the appropriateness of punitive damages.

*B. Whether the SDWA Abrogates Tribal Sovereign Immunity*

The Council argues that Congress failed to unequivocally abrogate tribal immunity in enacting the whistle blower provision of the SDWA. We review de novo the legal question of whether Congress has abrogated tribal immunity. See Ute Distribution Corp. v. Ute Indian Tribe, 149 F.3d 1260, 1263 (10th Cir. 1998).

As a preliminary matter, the Secretary has raised the issue of whether the tribe may even assert its immunity in this administrative proceeding. The Secretary argues it is the real party respondent and the Council cannot assert its immunity against a representative of the federal sovereign. Because we conclude that the SDWA has explicitly abrogated tribal immunity in any case, we need not address the merits of this argument.[1]

---

[1]The issue of whether immunity is validly asserted arguably precedes the issue of whether Congress has abrogated immunity, however, resolution of this issue may implicate issues of constitutional dimension. Therefore, we follow the "fundamental and longstanding principle of judicial restraint" which requires that we "avoid reaching constitutional questions in advance of the necessity of deciding them." Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S.

(continued...)

The Supreme Court recently reaffirmed the longstanding doctrine of tribal sovereign immunity. See Kiowa, 118 S. Ct. 1700, 1703 (1998) (holding that tribal immunity is "a matter of federal law" and is "settled law"); see also Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) ("Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers.").

But, as the Court has also observed, "[t]his aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress." Santa Clara, 436 U.S. at 58. Thus, Congress may abrogate a tribe's immunity from suit by statute. Id. Congressional waivers of tribal sovereign immunity, however, "cannot be implied but must be unequivocally expressed." Id. In "determining whether a particular federal statute waives tribal sovereign immunity, courts should 'tread lightly in the absence of clear indications of legislative intent.'" Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community, 991 F.2d 458, 462 (8th Cir. 1993) (quoting Santa Clara, 436 U.S. at 60).

Here, we conclude that the language of the Safe Drinking Water Act contains a clear and explicit waiver of tribal immunity. The SDWA's whistle

---

[1](...continued)
439, 445 (1988).

10

blower provision, section 300j-9(i)(1), provides:

> (1) No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee . . . has -
> . . . .
> (C) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this subchapter.

42 U.S.C. § 300j-9(i)(1)(C). The following section provides an enforcement mechanism against any "person" in violation of the act:

> Any employee who believes that he has been discharged or otherwise discriminated against by any  person  in violation of paragraph (1) may, within 30 days after such violation occurs, file (or have any person file on his behalf) a complaint with the Secretary of Labor . . . alleging such discharge or discrimination . . . .

Id. at § 300j-9(i)(2)(A) (emphasis added).

The definitional sections of the SDWA define the term "person" to include a "municipality." 42 U.S.C. § 300f(12). In turn, "municipality" is defined to include "an Indian tribe." 42 U.S.C. § 300f(10). Thus, under the express language of the Act, Indian tribes are included within the coverage of the whistle blower enforcement provisions.

The Council argues that such a definitional exercise can never constitute the explicit waiver of immunity required under  Santa Clara . We disagree. There is very little case law defining the precise scope of the "unequivocal expression" of waiver required. Importantly, however, courts considering tribal immunity

11

waivers – including the Santa Clara Court – have only found statutory language inadequately explicit when there was no language specifically establishing the cause of action at issue. See, e.g. , Santa Clara , 436 U.S. 49, 59 ("Nothing on the face of Title I of the ICRA [Indian Civil Rights Act] purports to subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief."); Ute, 149 F.3d at 1264 ("Like the ICRA, the [Ute Partition and Termination Act] is devoid of any language clearly expressing an intent to subject the Tribe to lawsuits in federal court over the joint management of the indivisible tribal assets.").

We take our cue from the decisions addressing waivers of Eleventh Amendment state sovereign immunity. Conceding potential differences between tribal and state sovereign immunity, we note that courts have often used similar language in defining the requirements for waiver of these immunities. See Seminole Tribe of Fla. v. Florida , 116 S. Ct. 1114, 1123 (1996)) (Congress must "unequivocally express its intent to abrogate the immunity" (quoting Green v. Mansour , 474 U.S. 64, 68 (1985)). In the state sovereign immunity context, courts have held definitional inclusions to be sufficiently explicit waivers of immunity. See, e.g. , Hurd v. Pittsburgh State Univ. , 29 F.3d 564, 565 (10th Cir. 1994) (affirming district court decision that Age Discrimination in Employment Act abrogated Eleventh Amendment immunity by defining "employer" – the class

12

of potential defendants – to include a "State").

Both parties have mustered legislative history to support their position. However, as the Supreme Court has noted in the context of Eleventh Amendment immunity, "[l]egislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment." Delmuth v. Muth, 491 U.S. 223, 230 (1989). Unable to find a rational basis on which to distinguish tribal immunity and state immunity with respect to this rule – and, perhaps more importantly, having found the text unambiguous – we do not find these arguments persuasive.

We hold that where Congress grants an agency jurisdiction over all "persons," defines "persons" to include "municipality," and in turn defines "municipality," to include "Indian Tribe[s]," in establishing a uniform national scheme of regulation of so universal a subject as drinking water, it has unequivocally waived tribal immunity. We note that Congress *could* have been more clear. Congress could have included a provision directly stating its intent to waive tribal immunity. However, "that degree of explicitness is not required." Davidson v. Board of Governors, 920 F.2d 441, 443 (7th Cir. 1990) (noting Congress need not state in "so many words" its intent to abrogate state sovereign immunity). Where the language of a jurisdictional grant is unambiguous as to its application to Indian tribes, no more is needed to satisfy the Santa Clara

13

requirement than that Congress unequivocally state its intent. See Blue Legs v. United States Bureau of Indian Affairs, 867 F.2d 1094, 1097 (8th Cir. 1989) ("text and history of the [Resource Conservation and Recovery Act] clearly indicated congressional intent to abrogate the Tribe's sovereign immunity" when provision authorized suit "against any person," "person" included "municipality," and "municipality" included "an Indian tribe"); see also Atlantic States Legal Found. v. Salt River Pima-Maricopa Indian Community, 827 F. Supp. 608 (D. Ariz. 1993) (citizen suit provision in Clean Water Act unequivocally waived tribal immunity by defining term "person" to include "Indian tribe").

The Council argues, however, that two other provisions of the SDWA show that Congress did *not* intend to waive tribal immunity here. The first provision addresses the federal sovereign immunity of agencies: "This subsection shall apply, notwithstanding any immunity of such agencies, under any law or rule of law." The Council argues the degree of explicitness of this waiver shows that Congress "knew the exact process for waiving governmental immunity from suit," Aplt. Br. at 27, and that Congress' failure to be so explicit here indicates it did not intend to waive the tribe's immunity. We do not agree: Congress' achievement of particular clarity in one waiver (while laudable and to be encouraged) does not mean that every waiver must be explicit to the same degree.

The second provision addresses tribal sovereignty: "[n]othing in the Safe

14

Drinking Water Amendments of 1977 shall be construed to alter or affect the status of American Indian lands or water rights nor to waive any sovereignty over Indian lands guaranteed by treaty or statute." 42 U.S.C. § 300j-6(c)(1). The Council argues this provision shows that Congress expressly preserved the tribe's sovereign immunity. But the whistle blower provision at issue here was part of the original 1974 Act, not the 1977 amendments. And, as we noted in Phillips Petroleum Co. v. EPA, section 300j-6(c)(1) "was enacted largely due to concern expressed by the Osage tribe that section 8 of the 1977 amendments [requiring federal agencies to adhere to state governmental oil and gas regulations], without this provision, would give jurisdiction over Indian lands to the State of Oklahoma." 803 F.2d 545, 557 n.16 (10th Cir. 1986). Accordingly, this express guarantee of sovereignty does not apply to the whistle blower provision at issue here.

*C. Whether the SDWA Conflicts with Other Tribal Statutory or Treaty Rights*

Alternatively, the Council argues that the SDWA conflicts with rights granted to it by statute and by treaty. First, the Council argues that the SDWA would impermissibly repeal by implication the 1906 Osage Allotment Act, ch. 3571, 34 Stat. 539 (1906) (the "1906 Act"). However, the Council has not identified any particular provision of the Act that would be impliedly repealed,

15

instead referring only to the general sovereign immunity that flows to it under that Act. It is, however, unarguable that Congress has the power to abrogate that immunity through explicit legislation. See Santa Clara , 436 U.S. at 58.

Second, the Council argues that the SDWA impermissibly interferes with its treaty rights under principles articulated in Donovan v. Navajo Forest Prods. Indus. , 692 F.2d 709 (10th Cir. 1982) and EEOC v. Cherokee Nation , 871 F.2d 937 (10th Cir. 1989). The Council argues application of the SDWA's whistle blower provision to the Council would impair its "right to exclude," guaranteed to it under Article 11 of the November 10, 1808 treaty. 1808 Treaty, 7 Stat. 107 ("And if any person or persons, for hunting or other purpose, shall pass over the boundary lines into the country reserved for the Great and Little Osage nations, without the license of . . . [a] proper officer, . . . the said Great and Little Osage . . . shall be at liberty to apprehend such unlicensed hunters or other persons . . . .").

But, the Council's argument misunderstands the inquiry in Donovan and Cherokee Nation . Both those cases considered the applicability of a *general* statute to an Indian entity, and concluded that in the absence of any *specific language* addressing Indian tribes, the court would not construe the statute as applicable to them when the statute would be in derogation of Indians' treaty rights. The Donovan principle is inapposite here, where the SDWA specifically

16

includes Indian tribes in the scope of its coverage. See Phillips, 803 F.2d at 552 ("The 1986 amendments to the SDWA resolve any doubt concerning coverage of the SDWA by expressly including Indian tribes"). We already considered and rejected this argument with respect to the SDWA generally. Id. at 556. The argument is even less compelling with respect to the specific whistle blower provision at issue here, which explicitly applies to Indian tribes.

*D. Is There a Violation of Trust Obligations*

Finally, the Council makes two arguments stemming from trust obligations. First, the Council argues that the Board decision impermissibly attempts to assess a money judgment against funds held in trust for Osage tribal members. As the Secretary has not yet issued a final remedial order, however, we do not find this issue ripe for decision.

Second, the Council argues that in bringing this action, the Secretary of Labor has violated the federal government's trust responsibility toward the tribe. See United States v. Creek Nation, 295 U.S. 103, 109 (1935) (federal executive is held to strict fiduciary standard); Felix S. Cohen, Handbook of Federal Indian Law 226 (1982). Trust duties may arise from statutory or treaty obligations, or from the breach of the obligations of an ordinary trustee. Cohen, supra, at 227. But here, the Council has not identified any specific statutory or treaty obligation

17

nor any ordinary trustee obligation that the Secretary of Labor has breached. Federal executives are held to strict fiduciary standards when charged with administering Indian lands or funds, or the disbursement of Indian benefits. See, e.g., Morton v. Ruiz, 415 U.S. 199, 236 (1974); Seminole Nation v. United States, 316 U.S. 286, 296 (1942). But here, the Secretary was not carrying out his duties with respect to administering Indian property or funds, rather the Secretary was carrying out his duties with respect to Congress' mandate on safe drinking water. The Council has not shown a fiduciary duty which was breached.

### III. Conclusion

For the foregoing reasons, we affirm the Secretary's determination that the Osage Tribal Council is not entitled to tribal sovereign immunity in this case because the SDWA whistle blower provision explicitly abrogates that immunity. We remand to the Secretary for further proceedings consistent with this order.