## In re KRYSTAL ENERGY CO., INC., Debtor.

Krystal Energy Co., Inc., Plaintiff/Appellant

v.

The Navajo Nation, Defendant/Appellee.

No. CIV–01–1970–PHX MHM.
Bankruptcy No. B 01–00166 ECF SSC.
Adversary No. 01–171.

United States District Court, D. Arizona.

Sept. 30, 2002.

---

J. Kent MacKinlay, Esq., Warnock MacKinlay & Associates PLLC, Mesa, AZ, for appellant.

Marcelino Rodolfo Gomez, Esq., Navajo Nation Department of Justice, Window Rock, AZ, for appellee.

## ORDER AFFIRMING THE BANKRUPTCY COURT'S RULING

MURGUIA, District Judge.

This matter comes before the Court on an appeal by Krystal Energy Co., Inc. ("Krystal" or "Plaintiff") of a ruling by the U.S. Bankruptcy Court for the District of Arizona, granting the motion to dismiss in favor of the Navajo Nation ("the Nation" or "Defendant") against Krystal.

## I. INTRODUCTION

Krystal claims the bankruptcy court erred as matter of law in granting the Nations' motion to dismiss. Krystal contends the Nations' sovereign immunity is abrogated under the revised 11 U.S.C. § 106(a), for purposes of subjecting the Nation to suit in actions under the Bankruptcy Code sections 505 and 542. The Nation counters that the definition of "governmental unit," as referred to in Section 106(a), does not specifically apply to Indian Tribes. The Nation further contends it has not waived its sovereign immunity either by filing of a proof of claim or formally entering into Krystals' bankruptcy proceeding. However, the Nation contends if it is subject to suit, Krystal failed to properly serve the complaint according to Bankruptcy Rule 7004(d)(6) and failed to join an indispensable party. For the following reasons, this Court affirms the judgment of the bankruptcy court and holds that Section 106(a) does not abrogate the Nation's sovereign immunity.

## II. BACKGROUND

On January 5, 2001, Krystal filed a Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Arizona. On March 5, 2001, Krystal filed an adversary proceeding against the Nation seeking (1) a turnover of certain assets under 11 U.S.C. § 542; (2) determination of tax due to the Nation under 11 U.S.C. § 505; and (3) damages arising out of the seizure of Krystal's assets by the Nation. For purposes of this appeal, the Court will not address Krystals' third count, as Krystal conceded the Nation does possess sovereign immunity regarding claims for damages. *Appellants' Br. at 2.*

On April 6, 2001, the Nation filed a motion to dismiss the complaint on three grounds; (1) Krystal's claims for turnover of property and determination of taxes are barred by sovereign immunity; (2) the Nation has not been properly served under Rule 7004 of the Bankruptcy Rules if it is subject to suit; and (3) Krystal has failed to join an indispensable party. *Appellees' Br. at 2.* The Nation made a special appearance to defend this adversary proceeding. On May 23, 2001, the bankruptcy court heard oral arguments from both plaintiff and defendant regarding the motion to dismiss filed by the defendant. On September 28, 2001, the bankruptcy court granted the Nation's motion to dismiss the complaint against Krystal. On October 12, 2001, Krystal filed a notice of appeal from the final order of the bankruptcy court, electing to have the appeal heard by this court, rather than the Bankruptcy Appellate Panel. *Appellants' Br. at 2.*

## III. ANALYSIS

### A. Standard of Review

■ This District Court has jurisdiction over appeals of bankruptcy courts final

judgments, orders, or decrees pursuant to 28 U.S.C. § 158(a)(1). On appeal from a bankruptcy court, a district court may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings. F.R.B.P. 8013. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, F.R.B.P. 8013. Under "clear error" standard for reviewing judgments, a reviewing court will not reverse simply because it would have decided differently; rather, the reviewing court must decide whether, on the entire evidence it has a definite and firm conviction that a mistake has been committed. *Easley v. Cromartie,* 532 U.S. 234, 243, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001); *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The District Court reviews bankruptcy court's factual findings under a clearly erroneous standard. *Banks v. Gill Distribution Centers, Inc.,* 263 F.3d 862 (9th Cir.2001); *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989).

▬ Here, the bankruptcy court's decision is a final judgment, as Krystal did not seek or obtain leave from the bankruptcy court to appeal. A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute judgment. *In re Bonham,* 229 F.3d 750, 761 (9th Cir.2000). A court should review on appeal questions concerning the application of the controlling law *de novo. Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

### B. Sovereign Immunity

▬ The first issue presented in this case is whether the bankruptcy court erred in determining 11 U.S.C. § 106(a) did not abrogate the Nation's sovereign immunity. Plaintiff argues Congress abrogated Appellee's sovereign immunity pursuant to the 1994 revised 11 U.S.C. § 106(a). Section 106(a)(1) reads in pertinent part:

> "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to *governmental unit* to the extent set forth in this section with respect to the following: (1)... 505... 542..." [Emphasis added]

Historically, the doctrine of sovereign immunity has been applied in bankruptcy cases to protect state and federal governments from claims asserted against them by creditors and debtors. Congress included Section 106 in the Bankruptcy Code of 1978 to abrogate sovereign immunity in certain instances to establish limitations upon the waiver of sovereign immunity. *Colliers on Bankruptcy* (15th Ed.) at 106–5. Congress, through the Bankruptcy Act of 1994, revised Section 106 in order to clarify Congress's intent to abrogate sovereign immunities of governmental units. *Id.* The amendment was intended to overrule two Supreme Court decisions; *Hoffman v. Connecticut Department of Income and Maintenance* [1] and *United States v. Nordic Village, Inc.* [2], which held that "sovereign immunity of the states and federal government was not waived by the enactment of former Section 106(c)." *Id.* As a result, amended Section 106(a)(1) lists the sections of Title 11, which abrogates Sovereign immunity, allowing the application of those provisions of the Code to governmental units.

The question now rests on whether Indian tribes are categorized as a "governmen-

---

1. 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76, 20 C.B.C.2d 1204 (1989).

2. 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181, 26 C.B.C.2d 9 (1992).

tal unit." Section 101(27) of the Code defines "governmental unit" as follows:

"United States; States; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; *or other foreign or domestic government.*" [Emphasis added]

Based on the above definition of "governmental unit," there is no clear mention of Indian tribes as a governmental unit. Krystal argues the clause "foreign or domestic government" is inclusive of Indian tribes; the Nation argues otherwise. The question still remains, do Indian tribes enjoy total sovereign immunity from bankruptcy suits absent clear statutory language? If found that Indian tribes are not governmental units, the case is affirmed; if found they are governmental units, the case will be remanded for further proceedings. Absent clear statutory guidance, this Court reviewed the following cases in its decision.

■ The Supreme Court clearly held that as a matter of federal law, Indian tribes are subject to suit only where Congress has authorized the suit or the tribe has waived its sovereign immunity. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering,* 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (Suits against Indian tribes are barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation); *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509,

111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (Suits against tribes are barred by sovereign immunity absent clear waiver by tribe or congressional abrogation); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Since holding Congress exceeded its authority, the abrogation of sovereign immunity under Section 106 could present constitutional issues with the Eleventh Amendment). The Ninth Circuit Court of Appeals held that a waiver of sovereign immunity for Indian tribes "cannot be implied but must be unequivocally expressed." *In re Greene,* 980 F.2d 590 (9th Cir.1992). Guidance came from the Bankruptcy Court from the Northern District of Iowa, which held that "Congress has not unequivocally abrogated Indian tribes' sovereign immunity from suit under the Bankruptcy Code," due to the fact "Indian tribes are not specifically included in the Section 101(27) definition of 'governmental unit.'" *In re National Cattle Congress,* 247 B.R. 259, 267 (Bankr.N.D.Iowa 2000).

In *Kiowa* the Supreme Court held that Indian Nations enjoy immunity from judicial attack absent consent to be sued. *Kiowa,* 523 U.S. at 757, 118 S.Ct. 1700. The Payee in *Kiowa* brought suit against the tribe to recover a promissory note executed by the Indian tribe. The tribe moved to dismiss for lack of jurisdiction, relying in part on sovereign immunity. While the Supreme Court has taken the lead in drawing the bounds of tribal immunity, the Court held that Congress, subject to constitutional limits, has the exclusive authority to alter its limits through *explicit legislation.* [Emphasis added] *Id.* at 759, 118 S.Ct. 1700; *See also, Santa Clara Pueblo, supra,* at 58, 98 S.Ct. 1670. The Court analyzed the conflict of Indian tribes and the Bankruptcy Code through a theory of tribal immunity, determining Congress refrained from abrogating sovereign

immunity in order to "promote economic development and tribal self-sufficiency." *Id.* Although the Court acknowledged this rationale could be challenged because modern tribal transactions extend beyond traditional tribal boundaries, the Court confirmed that Congress is the only one who can alter sovereign immunity through explicit legislation. *Id.* The Court believed tribal immunity is a matter of federal law, not of judicial decision-making. *Id.* Congress "has occasionally authorized limited classes of suits against Indian tribes" and "has always been at liberty to dispense with such tribal immunity or to limit it," however, Congress has not done so here. *Id.* Accordingly, the *Kiowa* court held that Indian tribe's are subject to suit only where Congress has authorized the suit. *Id.*

The Ninth Circuit Court of Appeals in *Greene* held that sovereign immunity for Indian tribes "cannot be implied but must be unequivocally expressed." 980 F.2d at 592. In *Greene,* the court considered whether the Chapter 7 trustee can sue an Indian tribe to avoid a preferential treatment. Although the bankruptcy court and district court rejected Defendant's claim of sovereign immunity, the Court of Appeals reversed and remanded with instructions to dismiss the adversary proceeding. *Id.* at 598. The Court determined that Congress considered the restrictive view of sovereign immunity when it adopted the Foreign Immunities Act of 1976. *Id.* at 594. Congress' adoption of the Act "implied at least two things: (1) It takes an act of Congress to effectively limit the sovereign immunity of a foreign sovereign; and (2) Congress knows how to limit the sovereign immunity of others when it wants to." *Id.* "The background of nearly two hundred years of recognizing sovereign immunity's extra-territorial reach, and the repeatedly recognized necessity of specific congressional action to limit tribal

sovereign immunity, congressional silence on the issue of Indian tribal immunity is a compelling, if not controlling factor." *Id.* A bankruptcy court's jurisdiction over property of the estate under 28 U.S.C. § 1334 and its jurisdiction to hear adversary proceedings does not pierce an Indian tribe's immunity from suit. *Id.* at 590. Accordingly, the *Greene* court held that Congress can only limit the scope of tribal immunity, and because Congress has not done so, "[Indian] tribes retain the immunity sovereigns enjoyed at common law, including its extra-territorial component." *Id.* at 594.

The Northern District of Iowa held that "[w]here the language of a federal statute does not include 'Indian tribes' in definitions of parties subject to suit or does not specifically assert jurisdiction over 'Indian tribes', courts find statutes insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity." *In re Cattle Congress*, 247 B.R. at 267. In *In re Nat'l Cattle*, the Debtor attempted to extinguish a real estate mortgage lien through the Chapter 11 Plan. The Tribe argued sovereign immunity protected the Indian tribe the exercise of jurisdiction by the bankruptcy court. *Id.* at 264. Although the Court held that "general acts of Congress apply to Indians as well as to all others in the absence of a clear expression to the contrary," the Court clarified and said "although Indian tribes may be subject to federal law, they continue to enjoy immunity from suits." *Id.* "Abrogation by Congress of sovereign immunity cannot be implied but must be unequivocally expressed." *Id.* The Court reasoned by using instances where Congress explicitly included "Indian tribes" in definitions of parties who may be sued. *Id.* (*citing, Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir.1989)) (finding congressional intent to abrogate Indians' immunity to violations of the Re-

source Conservation and Recovery Act); *Osage Tribal Council v. U.S. Dep't of Labor,* 187 F.3d 1174, 1182 (10th Cir.1999) (Tribes' sovereign immunity was abrogated to violations of the Safe Drinking Water Act). Because Section 101(27) of the Code makes no clear and specific reference to Indian tribes, unlike States and foreign governments, Congress has not unequivocally abrogated the tribes sovereign immunity under the Code. *Id.* Accordingly, the court held that the Section 106(a) did not abrogate tribal sovereign immunity. *Id.*

Like *Kiowa* and *Greene,* the Nation moved the court to dismiss for lack of jurisdiction, relying on sovereign immunity. Like *In re Cattle,* Krystal argued Section 106(a) abrogates this defense. The Supreme Court has made it clear that sovereign immunity for Indian tribes must be abrogated by either (1) waiver by the tribe or (2) explicit congressional intent. *Kiowa,* 523 U.S. at 751, 118 S.Ct. 1700. There is no dispute that the Nation did not waive their sovereign immunity, nor any doubt the Nation is a federally recognized Indian tribe. All parties agree that Indian tribes have a degree of sovereign immunity from actions filed by non-member parties, and that Congress has the sole authority and power to limit the tribe's immunity at any time. The question is whether *Congress* waived the Nation's immunity pursuant to Section 106? The answer is no. Section 101(27) of the Code does not explicitly identify "Indian tribe(s)" as a "governmental unit."

The purpose of 1994 revised Section 106(a) of the Bankruptcy Code reflects Congress' clear intent to abrogate sovereign immunity of *States. Seminole,* 517 U.S. at 57, 116 S.Ct. 1114 (finding Congress did not have the authority to do so).

Section 106(a) has been found to effectively abrogate the sovereign immunity of *foreign states. In re Tuli,* 172 F.3d 707, 711 (9th Cir.1999). (Iraq can no longer assert sovereign immunity under the new 1994 amendment to 106(a)). Congress in the past has *explicitly* restricted tribal immunity from suit in certain circumstances. *See, e.g.,* 25 U.S.C. § 450f(c)(3) (Self–Determination Contracts: mandatory liability insurance); 25 U.S.C. § 2710(d)(7)(A) (Tribal gaming ordinance); *See also, Florida Paraplegic, Association, Inc. v. Miccosukee Indian Tribe of Indians of Florida,* 166 F.3d 1126, 1131 (11th Cir.1999) (because Congress made no specific reference to Tribes in the ADA, tribal immunity is not abrogated; suit was dismissed). Yet, on other occasions Congress has just altered to the tribes sovereign immunity. *See, e.g.,* 25 U.S.C. § 450n ("Nothing in this sub-chapter shall... (1) affect, diminish, or otherwise impair an Indian tribe's *sovereign immunity*"). Historically, Chief Justice Marshall articulated the legal bases for sovereignty of the Indian Tribes in three U.S. Supreme Court cases scholars referred to as the "Marshall trilogy." Peter Capossela, *Indian Reserved Water Rights in the Missouri Basin,* 6 Great Plains Nat. Resource J., Spring/Summer 2002, at 131. The cases were *Cherokee Nation v. State of Georgia*[3], *Johnson v. McIntosh*[4], and *Worcester v. State of Georgia*[5]. Chief Justice Marshal set the foundation that recognized Tribes as "distinct political entities that possessed the ability to negotiate with the United States and are free from state authority." *Id.*

### C. Proper Service and Tax Determination

■ In view of the Court's decision with respect to sovereign immunity it is unnec-

**3.** 30 U.S. 1, 5 Pet. 1, 8 L.Ed. 25 (1831)

**4.** 21 U.S. (8 Wheat.) 543, 5 L.Ed. 681 (1823)

**5.** 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832)

essary to address the issues of service and determination of tax liability. As determined above, bankruptcy suits against Indian tribes are barred by sovereign immunity absent (1) waiver from the tribe or (2) explicit congressional intent to abrogate such defense. *Kiowa,* 523 U.S. at 751, 118 S.Ct. 1700. Based on the aforementioned reasons, neither has occurred here. Accordingly, because it was determined the Nation did not waive their immunity with regard to the U.S. bankruptcy laws, nor has the Code clearly abrogated their immunity, ruling on these issues are moot.

### D. Indispensable Party

■ In determining whether a nonparty is "indispensable," the district court must determine if absent party is "necessary" to action; then, if that party cannot be joined, the court must determine whether the party is "indispensable" so that in "equity and good conscience" the action should be dismissed. *Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1499 (9th Cir.1991). The decision is determined by the facts and circumstances of each case. *Id.* Here, there are no facts other than claims by the Nation. This Court agrees with the prior judge's analysis that not enough information has been provided to decide whether the United States is an indispensable party to this proceeding. Accordingly, the issue as to indispensable party is waived.

### IV. CONCLUSION

Considering the Supreme Court's pronouncements on tribal immunity, along with statutory language that does not unequivocally abrogate tribal immunity, inference to the contrary would be inappropriate. This is strengthened by the Supreme Court's instruction that the "unique trust relationship between the United States and Indian Nations,"

where Indian rights are at issue, "ambiguities in federal laws must be resolved to the Indians' advantage." *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985). Although Section 106(a) holds that immunity is abrogated for "governmental units," the definition of "governmental units," pursuant to Section 101(27), does not clearly include Indian tribes.

### V. DISTRICT COURT'S JUDGMENT

Accordingly, based upon the discussion above, the bankruptcy courts' Judgment dismissing Plaintiff's adversary complaint in favor of Defendant is AFFIRMED.