# Waiver of Sovereign Immunity With Respect to Whistleblower Provisions of Environmental Statutes

The federal government's sovereign immunity has been waived with respect to the whistleblower provisions of the Solid Waste Disposal Act and the Clean Air Act, but not with respect to the whistleblower provision of the Clean Water Act.

September 23, 2005

LETTER OPINION FOR THE SOLICITOR
DEPARTMENT OF LABOR

This letter will confirm the conclusions of our Office that the federal government's sovereign immunity has been waived with respect to the whistleblower provisions of the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6971 (2000), and the Clean Air Act ("CAA"), 42 U.S.C. § 7622 (2000), but not with respect to the whistleblower provision of the Water Pollution Prevention and Control Act (commonly known as the Clean Water Act ("CWA")), 33 U.S.C. § 1367 (2000). These questions arose in May 2004 in the context of an interagency dispute within the Executive Branch concerning the application of these statutes. *See* Exec. Order No. 12146, § 1-401, 3 C.F.R. 409, 411 (1979 Comp.), *reprinted in* 28 U.S.C. § 509 note (2000); 28 C.F.R. § 0.25(a) (2004).

## I.

The SWDA and the CWA prohibit, *inter alia*, discrimination against an employee who "has filed, instituted, or caused to be filed or instituted any proceeding under this chapter." SWDA, 42 U.S.C. § 6971(a); CWA, 33 U.S.C. § 1367(a). The CAA similarly prohibits, *inter alia*, discrimination against an employee who has "commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter" or who has "assisted or participated in or is about to assist or participate in any manner in such a proceeding or in any other action." 42 U.S.C. § 7622(a). The Secretary of Labor is authorized to resolve these whistleblower claims, with limited review available in federal court. *See* SWDA, 42 U.S.C. § 6971(b); CWA, 33 U.S.C. § 1367(b); CAA, 42 U.S.C. § 7622(c).

The relevant provision in the SWDA provides:

> No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter or under any applicable implementation plan, or has testified or is about to testify in any

proceeding resulting from the administration or enforcement of the provisions of this chapter or of any applicable implementation plan.

42 U.S.C. § 6971(a). An aggrieved employee may file a complaint against "any person," *id.* § 6971(b), which the SWDA defines as "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body and shall include each department, agency, and instrumentality of the United States," *id.* § 6903(15) (2000).

The relevant provision in the CAA provides:

> No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)—
>
> (1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or a proceeding for the administration or enforcement of any requirement imposed under this chapter or under any applicable implementation plan,
>
> (2) testified or is about to testify in any such proceeding, or
>
> (3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this chapter.

42 U.S.C. § 7622(a). The CAA does not define the term "employer" but permits aggrieved employees to file a complaint against "any person," *id.* § 7622(b)(1), which the CAA defines as "an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof," *id.* § 7602(e) (2000).

The relevant provision in the CWA provides:

> No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

33 U.S.C. § 1367(a). An aggrieved employee may file a complaint against "any person," *id.* § 1367(b), which the CWA defines as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body," *id.* § 1362(5) (2000).

## II.

It is axiomatic that the government may not be sued without its consent. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Where Congress chooses to waive that immunity, its intent "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Waivers of immunity, furthermore, "must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (internal quotation marks, citations, and alterations omitted); *see also Lane*, 518 U.S. at 192 (noting that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign"). These principles governing waivers of sovereign immunity apply not just in cases pending before Article III courts, but also in adjudications before agencies and non-Article III courts, because it is Congress, not the Executive Branch, that determines the scope of such waivers. *See, e.g.*, *Ardestani v. INS*, 502 U.S. 129, 137 (1991) (holding that sovereign immunity barred fee award to prevailing party in INS proceeding); *United States v. Nordic Village*, 503 U.S. 30, 34 (1992) (holding sovereign immunity presumptions apply in bankruptcy court proceedings); *Foreman v. Dep't of Army*, 241 F.3d 1349, 1352 (Fed. Cir. 2001) (applying sovereign immunity principles in holding that the Merit System Protection Board lacks authority to impose monetary damages).

## A.

The SWDA permits whistleblower claims against any "person," 42 U.S.C. § 6971(b), which is elsewhere defined to include "each department, agency, and instrumentality of the United States," *id*. § 6903(15). This express language satisfies the stringent test for waiver of immunity. In *Department of Energy*, for example, the Supreme Court held that statutory language in the CWA (not at issue here) authorizing citizen suits against "'any person (including . . . the United States)'" sufficed to waive the government's immunity from such suits. 503 U.S. at 615 (quoting 33 U.S.C. § 1365(a)). Although the definition of "person" here is found not in the whistleblower provision itself, but rather in a separate provision defining various terms used in the SWDA, this cross-reference does not dull the clarity of the waiver of immunity. *Cf. Kimel v. Florida*, 528 U.S. 62, 76 (2000) (noting, in the similar context of congressional abrogation of state sovereign immunity, that Supreme Court "cases have never required that Congress make its

clear statement in a single section or in statutory provisions enacted at the same time").

### B.

The CAA prohibits whistleblower retaliation by any "employer," 42 U.S.C. § 7622(a), which is not defined, and permits aggrieved employees to file a complaint against any "person," *id.* § 7622(b)(1), which is elsewhere defined to include "any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof," *id.* § 7602(e). Although the term "employer" is not defined, the relevant provision in section 7622 authorizes whistleblower suits against any "person," and the federal government is expressly included in the definition of "person." In reviewing an assertion of tribal sovereign immunity from a claim brought under the whistleblower provision of the Safe Drinking Water Act, 42 U.S.C. § 300j-9 (2000)—which, like the CAA, separately prohibits retaliation by "employer[s]" and permits suits against "person[s]"—the Tenth Circuit similarly focused its analysis on the term "person": "where Congress grants an agency jurisdiction over all 'persons,' defines 'persons' to include 'municipality,' and in turn defines 'municipality,' to include 'Indian Tribe[s],' . . . it has unequivocally waived tribal immunity." *Osage Tribal Council ex rel. Osage Tribe of Indians v. Dep't of Labor*, 187 F.3d 1174, 1182 (10th Cir. 1999). The definitional connection here is more direct, and by expressly including the "United States" in the definition of "person," Congress has waived the government's immunity from suit under the CAA's whistleblower provision.

### C.

The CWA permits whistleblower claims against any "person," 33 U.S.C. § 1367(a), which is elsewhere defined to include "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body," *id.* § 1362(5). The definition thus does not include the United States, *see Dep't of Energy*, 503 U.S. at 617–18 (noting that the CWA does not "define[] 'person' to include the United States" and stating that an "omission has to be seen as a pointed one when so many other governmental entities are specified"),[1] and we therefore believe that section 1367 does not abrogate the federal government's sovereign immunity.

---

[1] We do not read the term "interstate body" to refer unequivocally to the United States. The CWA elsewhere defines "interstate agency" to mean "an agency of two or more States established by or pursuant to an agreement or compact approved by the Congress, or any other agency of two or more States, having substantial powers or duties pertaining to the control of pollution[.]" 33 U.S.C. § 1362(2). We think it likely that "interstate body" has a similar meaning, but for present purposes it is sufficient to state that the term does not unequivocally include the federal government, which is the test for waiver of sovereign immunity.

We note, however, that a limited waiver of sovereign immunity is found in a separate provision of the CWA addressing the discharge or runoff of pollutants at certain federal facilities. *See* 33 U.S.C. § 1323(a). That section provides:

> Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants . . . shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner.

*Id.* It might be argued that the whistleblower provision in section 1367 is a means to enforce pollution control and is, therefore, a "requirement[] . . . respecting the control and abatement of water pollution" for which sovereign immunity is waived. Even accepting *arguendo* that that is a possible construction of the CWA, it is certainly not the only one, and we believe that section 1323 does not unequivocally indicate a waiver of sovereign immunity with respect to section 1367 as required by Supreme Court precedents.

The phrase "requirements . . . respecting the control and abatement of water pollution" is not defined in the CWA. Interpreting an earlier version of section 1323, the Supreme Court indicated a narrow reading of "requirement" to refer "simply and solely to substantive standards, to effluent limitations and standards and schedules of compliance." *EPA v. California*, 426 U.S. 200, 215 (1976) (internal quotation marks and citations omitted). Applying the canon that waivers of sovereign immunity are to be narrowly construed, the Court in *EPA* held that "requirement" did not include state permits or other procedural mechanisms designed to ensure compliance with substantive pollution control standards. *Id.* at 213–27. As previous Labor Department decisions have pointed out, however, Congress overruled the holding in *EPA* in 1977 by amending section 1323 to waive sovereign immunity from, *inter alia*, "any requirement whether substantive or procedural." *See Jenkins v. EPA*, No. 92-CAA-6, 1994 WL 897221, at *3 (May 18) ("Congress amended the Federal facilities provision of the CWA . . . to overrule *EPA* . . . and to clarify that the Federal Government was required to

comply with State permit, reporting and other procedural requirements."); *Conley v. McClellan Air Force Base*, No. 84-WPC-1, 1993 WL 831968, at *4 (Sept. 7) (same). Although there was no congressional discussion of the CWA's whistle-blower provision during the enactment of these amendments, the Labor Department has read the history of section 1323 to "suggest[] that [Congress] also intended all requirements of the [CWA] to apply" to federal facilities. *Jenkins*, 1994 WL 897221, at *3; *see also Conley*, 1993 WL 831968, at *4 (same).

Numerous courts, however, have concluded that the 1977 amendments "did not change the extent to which section [1323] waived immunity from state or local control; it merely made it clear that where federal agencies are subject to state or local regulation they must comply with state or local procedural as well as substantive requirements." *United States v. Tenn. Water Quality Control Bd.*, 717 F.2d 992, 997 (6th Cir. 1983); *cf. Parola v. Weinberger*, 848 F.2d 956, 961 (9th Cir. 1988) (finding that legislative reaction to *EPA* indicates that "requirement" also includes "the procedural *means* by which [substantive environmental] standards are implemented: including permit requirements, reporting and monitoring duties, and submission to state inspections"). That is, Congress intended to overrule the specific holding in *EPA* by authorizing state procedural enforcement mechanisms, but it did not necessarily intend to expand the phrase "requirements . . . respecting the control and abatement of water pollution" beyond "substantive standards" or "effluent limitations." According to these courts, "the 'requirements' referred to in the CWA . . . relate only to pollution standards that a State might impose as part and parcel of its environmental programs." *N.Y. State Dep't of Envtl. Conservation v. Dep't of Energy*, 772 F. Supp. 91, 97 (N.D.N.Y. 1991); *see also New York v. United States*, 620 F. Supp. 374, 382 (E.D.N.Y. 1985) ("[T]o the degree the Supreme Court's ruling in [*EPA*] construed the substantive 'requirements' of [section 1323] to mean effluent limitations, such ruling was unaffected by the 1977 amendments enacted by Congress."); *Kelley v. United States*, 618 F. Supp. 1103, 1108 (W.D. Mich. 1985) (noting that "'requirements' language has generally been held to mean 'relatively precise standards capable of uniform application'" and that section 1323 only waives sovereign immunity with respect to "objective, quantifiable standards subject to uniform application") (citations omitted). Indeed, the language that the Supreme Court interpreted in *EPA*—"'requirements respecting control and abatement of pollution,'" 426 U.S. at 209 (quoting 33 U.S.C. § 1323 (Supp. IV 1970))—is virtually identical to the current language in section 1323.

Under this interpretation, it is difficult to see how section 1367—which establishes remedies for employer whistleblower retaliation—is a "requirement," let alone a "requirement[] . . . respecting the control and abatement of water pollution." The CWA whistleblower provision is not a quantifiable restriction on pollutants and there is substantial doubt whether it could even be viewed as a means for ensuring compliance with such requirements. This doubt is fatal to a finding of a waiver of sovereign immunity, for the Supreme Court has held that where there are two plausible interpretations of a provision, with only one waiving

sovereign immunity, such provision does not unequivocally indicate a waiver of sovereign immunity. *See Nordic Village*, 503 U.S. at 36–37 (that there are "plausible" alternative readings of a provision that would not waive sovereign immunity "is enough to establish that a reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted").[2] Considering that section 1367—the whistleblower provision itself—does not identify the federal government as an entity subject to suit, and considering that the term "requirement" has been narrowly construed by several courts notwithstanding the 1977 amendments, we do not believe that section 1323's reference to "requirements . . . respecting the control and abatement of water pollution" waives the federal government's sovereign immunity from whistleblower claims under section 1367.

Nor do we believe that other undefined language in section 1323—subjecting federal facilities to "administrative authority" and "process and sanctions"— waives the government's sovereign immunity from whistleblower claims under section 1367. First, "administrative authority" would seem to refer to governmental entities charged with regulating water pollution, and perhaps to any fines or penalties that they might be authorized to impose. *Cf. United States v. Tenn. Air Pollution Control Bd.*, 185 F.3d 529, 532 (6th Cir. 1999) (holding that civil penalty assessed by a state administrative agency was an "administrative remedy or sanction" within the meaning of the CAA's citizen suit provision). Section 1367—which creates a cause of action, not a regulatory regime—does not naturally, and certainly not unequivocally, fall within the meaning of "administrative authority." Second, the Supreme Court, in narrowly reading "sanction" to mean only "coercive" fines, reasoned that Congress's conjunction of the terms "process" and "sanctions" was likely meant to refer to "the procedure and mechanics of adjudication and the enforcement of decrees or orders that the adjudicatory process finally provides" or "forward-looking orders . . . characteristically given teeth by equity's traditional coercive sanctions for contempt." *Dep't of Energy*, 503 U.S. at 623. A whistleblower claim is not an order or remedy designed to abate water pollution; it is a freestanding claim designed to provide employment rights and remedies independent of the substantive requirements of the CWA. But even if there were a broader gloss of "process and sanctions" than that indicated by the Supreme Court, it cannot be maintained that the phrase unequivocally includes whistleblower claims under section 1367. For these

---

[2] In *Department of Energy*, for example, the Supreme Court narrowly read the term "sanction" in section 1323 to include "coercive" but not "punitive" fines. 503 U.S. at 627. Although the Court conceded that the "meaning of 'sanction' is spacious enough to cover not only what we have called punitive fines, but coercive ones as well," it determined that the use of the term in section 1323 "carries no necessary implication that a reference to punitive fines is intended." *Id.* at 621. Because Congress did not make express any intent to subject federal facilities to punitive fines, the Supreme Court determined that the "rule of narrow construction therefore takes the waiver no further than the coercive variety." *Id.* at 627.

reasons, we do not read section 1323 to waive the government's sovereign immunity from suit under the CWA's whistleblower provision.

### III.

In sum, it is our conclusion that the government's sovereign immunity has been waived by the whistleblower provisions of the SWDA, 42 U.S.C. § 6971, and the CAA, *id.* § 7622, but not with respect to the whistleblower provision of the CWA, 33 U.S.C. § 1367.

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*