**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-3107

Golman A. Dillon, Jr., also *known
as Bill A. Dillon,            *
                             *
        Appellant,            *
                             * Appeal   from   the   United
States
        v.                   * District Court for the
                             * District of South Dakota.
Yankton Sioux Tribe Housing *
Authority,                    *
                             *
        Appellee.             *

Submitted:  March 11, 1998

Filed:  May 20, 1998

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1]
District Judge.

HEANEY, Circuit Judge.

    Golman Dillon was terminated by the Yankton Sioux
Housing Authority (Authority).   Claiming that he was
fired because he is white, Dillon sued under various

_____

    [1]The Honorable H. Franklin Waters, United States District Judge for the Western
District of Arkansas.

civil rights statutes in federal district court.  The district court determined that it lacked jurisdiction due to tribal sovereign immunity and granted summary judgment for the Authority.  We affirm.

I.

Dillon worked for the Authority as coordinator of their Comp/Grant Department.  He was responsible for, among other things, modernizing Indian housing developments on the Yankton Sioux Reservation.  Dillon claims that he was terminated because he is white and brought suit under 42 U.S.C. §§ 1981, 1985, 1986 and Title VII, 42 U.S.C. §§ 2000e-2(m).  Consequently, we must determine whether the Authority's motion to dismiss, which the district court converted into a summary judgment motion, was properly granted due to sovereign immunity.

Dillon claims that the Yankton Sioux Tribe has waived sovereign immunity by allowing the Authority to be sued in its authorizing charter.  Tribal Resolution No. 77-71, Article V(2) states:

> The Committee hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have, but the Tribe shall not be liable for the debts or obligations of the Authority.

2

(J.A. at 30.)  Dillon argues that because the Authority receives federal financial assistance from the Department of Housing and Urban Development (HUD), and thereby must agree to comply with federal civil rights laws, it has waived sovereign immunity.  Dillon suggests that it would be incongruous for the Authority to agree to follow federal law, yet shield itself from suit in federal court.  The district court agreed that a contract with HUD, under which Dillon receives his salary, could be an effective

3

waiver of sovereign immunity for purposes of interpreting the "sue and be sued" provision quoted above. Nevertheless, the court determined that the contract did not expressly waive sovereign immunity.[2]  Alternatively, Dillon contends that the Authority was a corporation created by the Tribe and should be subject to suit like any other corporate entity created by the United States.

## II.

We review a district court's grant of summary judgment de novo.  United States ex. rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir. 1992).  In considering whether to grant summary judgment, a court examines all the "pleadings, depositions, answers to

---

[2]The July 1995 contract with HUD provided that the Authority:

[S]hall comply with all statutory, regulatory, and executive order requirements pertaining to civil rights, equal opportunity, and nondiscrimination, as those requirements now exist, or as they may be enacted, promulgated, or amended from time to time.  These requirements include, but shall not be limited to, compliance with at least the following authorities:  Title VI of the Civil Rights Act . . . the Fair Housing Act  . . . section 504 of the Rehabilitation Act of 1973 . . . the Age Discrimination Act of 1975 . . . the Americans with Disabilities Act . . . Executive Order 11063 on Equal Opportunity in Housing . . . Executive Order 11246 on Equal Opportunity in Housing . . . Executive Order 11246 on Equal Employment Opportunity, as amended by Executive Order 11375 . . . and Executive Order 12892 on Affirmatively Furthering Fair Housing.  An Indian Housing Authority established pursuant to tribal law shall comply with applicable civil rights requirements, as set forth in Title 24 of the Code of Federal Regulations.

(J.A. at 149-50.)

4

interrogatories . . . admissions on file . . . [and] affidavits." Fed. R. Civ. P. 56(c). After viewing the record in a light most favorable to the nonmoving party,

summary judgment is appropriate only where there is "no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law."  Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) (citations omitted).

In Weeks Construction, Inc. v. Oglala Sioux Housing Authority, 797 F.2d 668, 670 (8th Cir. 1986), we stated that "[i]t has been held that a housing authority, established by a tribal council pursuant to its powers of self-government, is a tribal agency." Id.  (citation omitted).  In Weeks, the housing authority was created in a similar fashion to the Authority created here. Therefore, we must treat the Authority as a tribal agency rather than a separate corporate entity created by the tribe.

Having determined that the Authority is a tribal agency, we must decide whether it enjoys sovereign immunity.  In Santa Clara Pueblo v. Martinez, 436 U.S. 39, 58 (1978), the United States Supreme Court reaffirmed its long-held view that, as it relates to tribes, "a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." Id. (internal quotation and citation omitted).  Citing this language, the district court determined that the Authority did not unequivocally waive its right to be sued.

Dillon argues that our court has explicitly held that the "sue and be sued" provision quoted above automatically constitutes a waiver of sovereign immunity. Dillon cites Weeks for the proposition that "[a] 'sue and be sued' clause such as is set forth in the tribal

6

ordinance . . . has been recognized as constituting an express waiver of sovereign immunity." <u>Weeks</u>, 797 F.2d at 671 (citations omitted).  Dillon's argument fails, however, because in <u>Weeks</u>, and the cases cited therein, an express waiver of sovereign immunity was found in a written contract.

The tribal resolution quoted above specifically states that  "the Authority [may] agree by contract to waive any immunity from suit it might otherwise have." (J.A. at 30.)  In this case, the Authority never explicitly waived its sovereign immunity through

7

a written contract. The Authority did not have a written contract with Dillon and could not have waived its sovereign immunity through an implied agreement.

Dillon suggests that because the Authority entered into an agreement with HUD and promised to abide by various civil rights statutes, it effectively waived its sovereign immunity. In its agreement with HUD, the contract signed by the Authority specifically provides that "[a]n Indian Housing Authority established pursuant to tribal law shall comply with applicable civil rights requirements, as set forth in Title 24 of the Code of Federal Regulations." (J.A. at 150.) There is no provision in these regulations, however, mandating a waiver of sovereign immunity when a tribal housing authority enters into an agreement with HUD.

Because the Authority did not explicitly waive its sovereign immunity, we lack jurisdiction to hear this dispute.[3] Therefore, as the district court correctly pointed out, Dillon may pursue in tribal court any claims he may have against the Authority under the Indian Civil

---

[3]Even if we found that the Authority waived sovereign immunity, we still would not have federal question jurisdiction to resolve this dispute. Johnson v. Prarie Island Dakota Sioux, 21 F.3d 302, 304-05 (8th Cir. 1994) (per curiam). Dillon failed to allege a cause of action under Title VII, 42 U.S.C. §§ 2000e(b) and 2000e-2(i), or under 42 U.S.C. §§ 1981, 1985, and 1986, see Runs After v. United States, 766 F.2d 347, 354 (8th Cir. 1985); Wardle v. Ute Indian Tribe, 623 F.2d 670, 672-73 (10th Cir. 1980). Neither party raised this issue on appeal; and, similar to our approach in Weeks Construction, Inc. v. Oglala Sioux Housing Authority, 797 F.2d 668, 670 (8th Cir. 1986), we first addressed the issue of tribal sovereign immunity; see also Johnson, 21 F.3d at 305 (explaining that in Weeks our court treated "sovereign immunity and subject matter jurisdiction as separate inquiries").

Rights Act, 25 U.S.C. §§ 1301-1303, and other applicable law.

                                III.

        For the reasons set forth above, we affirm the judgment of the district court.

A true copy.

Attest.

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.