Sandy **BUCHANAN, Douglas DeWalt, Norbert Polar, Norma Smith, Tina Van Zile, Individually and as Members of the Sokaogon Chippewa Housing Authority, Plaintiffs,**

v.

**SOKAOGON CHIPPEWA TRIBE, Acting by and through the Sokaogon Chippewa Community Tribal Council, Charles Fox, Acting as Chairman of the Tribal Council of the Sokaogon Chippewa Community, Peter McGeshick, Jr., Acting as Vice–President of the Tribal Council of the Sokaogon Chippewa Community, Roger McGeshick, Jr., Acting as Councilman, Defendants.**

No. 98–C–611.

United States District Court,
E.D. Wisconsin.

March 30, 1999.

Martin E. Kohler, John C. Thomure, Jr., Kohler & Hart, Milwaukee, WI, for plaintiffs.

Guy C. Charlton, Andrew H. Morgan, Charlton Law Offices, Milwaukee, WI, for defendants.

### DECISION AND ORDER

CURRAN, District Judge.

Five former members of the former Sokaogon Chippewa Housing Authority (Sandy Buchanan, Douglas DeWalt, Norbert Polar, Norma Smith and Tina Van Zile) are suing the Sokaogon Chippewa Tribe; its Tribal Council; it's Chairman, Charles Fox; Vice Chairman, Peter McGeshick, Jr. and Council Member Roger McGeshick, Jr. for violations of federal and state law stemming from the operation and control of tribal housing programs. All the Plaintiffs except Douglas DeWalt are enrolled members of the Mole Lake Band of the Lake Superior Sokaogan Chippewa Community, an American Indian tribe officially recognized by the United States government. *See* 25 U.S.C. § 476. They were board members of the Sokaogon Chippewa Housing Authority which was created in 1964 to operate housing programs with federal funds dispensed by federal and state agencies. Plaintiff DeWalt was the Housing Authority's Executive Director.

The Plaintiffs allege that this court has jurisdiction over the subject matter of their claims pursuant to 28 U.S.C. §§ 1331, 1362, 1367, 2201 & 2202. The Defendants

have contested jurisdiction by moving to dismiss.

## I. FACTS

This action arose out of an ongoing dispute between two factions of the Mole Lake Band of the Sokaogon Chippewa Community which resides on a reservation located within Wisconsin. The Plaintiffs refer to themselves as "members of the Sokaogon Chippewa Housing Authority," but the Housing Authority no longer officially exists. In January of 1998, a group, including the individual Defendants in this case, assumed control of the Tribal Council following an election which the Plaintiffs consider illegal. In May of 1998, the Tribal Council dissolved the Housing Authority thereby ousting the Plaintiffs from their positions on its board. The Tribal Council, which includes Defendants Charles Fox, Peter McGeshick, Jr. and Roger McGeshick, Jr., now operates the housing programs.

The Plaintiffs claim that the Defendants have failed to maintain the housing programs' compliance with federal regulations. They say that the water system no longer meets federal Environmental Protection Agency standards. The Plaintiffs fear that this defalcation will have a negative impact on gaming and on public health.

The Plaintiffs also allege that the Defendants have failed to pay state and federal taxes on housing obligations, thereby incurring fines and impairing credit. At the time the Complaint was filed, the Plaintiffs claimed that the Tribal Council had failed to submit an annual financial plan to the federal Department of Housing and Urban Development (HUD) for approval of feder-

al funds for the coming year's housing programs. If a plan is not timely filed, money is dispersed to other tribes and no more federal funding is available for another year.

Finally, the Plaintiffs allege that the Defendants contacted the M & I Bank where the Housing Authority maintained an account and warned the bank not to honor checks written by the former Housing Authority members and not to allow the Plaintiffs access to bank account funds. The Plaintiffs claim that, as a result, vendors and creditors have not been paid.

Based upon these allegations, the Plaintiffs have brought three claims against the Defendants.[1] In "Counts" I and II, the Plaintiffs claim that the Defendants conspired to interfere with the operations of the Housing Authority through a pattern of racketeering which has included mail fraud, conversion, threats, and civil rights violations.[2] They seek damages of one million dollars, trebled, a permanent injunction, and the appointment of a receiver under the Racketeering Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. Count III is a state law claim alleging conversion of Housing Authority funds and property.

Along with their Complaint, the Plaintiffs filed a motion for a temporary restraining order asking this court for an order restraining the Defendants from operating or exerting any control over the housing programs and appointing a receiver. *See* Federal Rule of Civil Procedure 65(b). On July 1, 1998, the court held a hearing on this motion, but the hearing was adjourned and the motion was denied,

1. Although the court raised the issue of standing at the hearing on the Plaintiffs' motion for a temporary restraining order, the parties have not satisfactorily established that the four Plaintiffs who are enrolled members of the Community or that Plaintiff DeWalt, who is not an enrolled member, have any interests or injuries which give them standing to maintain their claims. *See generally United States ex rel. Mosay v. Buffalo Brothers Management Incorporated,* 20 F.3d 739 (7th Cir.), *cert. de-*

*nied,* 513 U.S. 866, 115 S.Ct. 185, 130 L.Ed.2d 119 (1994). However, because the court is dismissing the claims, in part, on other jurisdictional grounds, it need not pin the parties down on this issue.

2. Most of the acts alleged are not the type of "predicate acts" required to maintain a RICO claim. *See* 18 U.S.C. § 1961. *See also generally Jennings v. Emry,* 910 F.2d 1434 (7th Cir.1990).

*see* Order of July 16, 1998, after the Defendants challenged subject matter jurisdiction.

The Defendants then filed a motion to dismiss in which they argue that the doctrine of tribal sovereign immunity bars this action against the Tribe, the Tribal Council, and the individual tribal officials.[3] *See* Federal Rule of Civil Procedure 12(b)(1). The Plaintiffs, in turn, contend that the Defendants have clearly waived their sovereign immunity under a Housing Authority Ordinance they enacted on April 2, 1998. The Plaintiffs also assert that resort to the tribal court would be futile because the Defendants control the court. Finally they argue that, because federal agencies and federal funds are involved with the Housing Authority, a federal court should assume jurisdiction.

## II. *TRIBAL SOVEREIGN IMMUNITY*

Tribal sovereign immunity is a judicial doctrine which developed in the early part of this century. *See Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, ——, 118 S.Ct. 1700, 1703, 140 L.Ed.2d 981 (1998). The doctrine recognizes that "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (quoting *Worcester v. Georgia*, 31 U.S. 515, 559, 6 Pet. 515, 559, 8 L.Ed. 483 (1832)). "Although no longer 'possessed of the full attributes of sovereignty,' [the Indians] remain a 'separate people, with the power of regulating their internal and social relations.'" *Santa Clara Pueblo*, 436 U.S. at 55, 98 S.Ct. 1670 (quoting *United States v. Kagama*, 118 U.S. 375, 381–82, 6 S.Ct. 1109, 30 L.Ed. 228 (1886)). Thus, courts have developed the Indian tribal sovereign immunity doctrine which holds that Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. *See Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). *See also McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 168–69, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (outlining the roots of the Indian sovereignty doctrine). Although the United States Supreme Court recently questioned the continuing justification for the doctrine of tribal sovereign immunity, the Court declined to overrule its precedent upholding the doctrine and chose to defer to Congress for any decision to abrogate tribal immunity. *See Kiowa Tribe*, 523 U.S. at ——, 118 S.Ct. at 1703–05.

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe*, 523 U.S. at ——, 118 S.Ct. at 1702. It is well-settled that a waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)).

In this case the Plaintiffs argue that the Defendants waived tribal immunity by enacting the following Housing Authority Ordinance on April 2, 1998:

> The council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority.

---

**3.** The Defendants have also moved to dismiss for failure to state a claim upon which relief can be granted. *See* Federal Rule of Civil Procedure 12(b)(6). However, when faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court should ordinarily decide the 12(b)(1) motion first. *See Northeast Erectors Association of BTEA v. Secretary of Labor*, 62 F.3d 37, 39 (1st Cir.1995).

Complaint at Exhibit C (Housing Authority Ordinance at Article V, ¶ 2). The Plaintiffs believe that this ordinance waives immunity for the Community, the Tribal Council, and its officials.

The Mole Lake Band's Ordinance is the type of provision which HUD requires a tribe to include in ordinances establishing its housing authority before the tribe can qualify for HUD assistance. *See* 24 C.F.R. § 950.126 (1998). It is identical to the ordinance considered recently by the Eighth Circuit in *Dillon v. Yankton Sioux Tribe Housing Authority,* 144 F.3d 581 (8th Cir.1998). In *Dillon,* a non-Indian brought an employment discrimination suit against the Yankton Sioux Tribe's Housing Authority. The Plaintiff cited the Eighth Circuit's decision in *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668, (8th Cir.1986), for the proposition that "[a] 'sue and be sued' clause such as is set forth in the tribal ordinance ... has been recognized as constituting an express waiver of sovereign immunity." *Id.* at 671 (citations omitted). However, the *Dillon* court concluded that *Weeks* was inapplicable because "in *Weeks,* and the cases cited therein, an express waiver of sovereign immunity was found in a written contract." *Dillon,* 144 F.3d at 583. The *Dillon* court explained that:

> The tribal resolution quoted above specifically states that "the Authority [may] agree by contract to waive any immunity from suit it might otherwise have." In this case, the Authority never explicitly waived its sovereign immunity through a written contract. The Authority did not have a written contract with Dillon and could not have waived its sovereign immunity through an implied agreement.

*Id.* at 584 (citation omitted). The Eighth Circuit concluded that the tribe had not waived its sovereign immunity and affirmed the summary judgment in favor of the tribal housing authority.

■ In the instant case, the Plaintiffs have not established that the tribe's Ordinance constitutes a general waiver of sovereign immunity or that any of the Defendants entered into a written contract waiving tribal immunity after the ordinance was enacted on April 2, 1998. Therefore, the court concludes that neither the Sokaogon Chippewa Community nor its Tribal Council have waived its tribal sovereign immunity.

■ The second prong of the test for whether an Indian tribe is subject to suit in federal court asks whether Congress has authorized the suit. The Plaintiffs here are claiming injury by RICO violations and by common-law conversion. They have not attempted to show that Congress has abrogated tribal sovereign immunity for either RICO or common-law conversion claims. In *Smith v. Babbitt,* 875 F.Supp. 1353, 1365 (D.Minn.1995), *aff'd,* 100 F.3d 556 (8th Cir.1996), *cert. denied sub nom. Feezor v. Babbitt,* —— U.S. ——, 118 S.Ct. 46, 139 L.Ed.2d 12 (1997), where allegedly "constitutionally qualified" members of an Indian community sued the community, its business council, and individual community officials, among others, the court concluded that: "RICO contains no language which suggests Congress 'unequivocally' waived Indian tribes' sovereign immunity." *Smith v. Babbitt,* 875 F.Supp. at 1365. Thus, with no basis in law or fact for concluding that Congress has authorized this suit or that the Sokaogon Chippewa Community has waived its immunity, the court concludes that the Plaintiffs' claims against the Sokaogon Chippewa Community and the Sokaogon Chippewa Tribal Council are barred by the doctrine of tribal sovereign immunity.

The question of immunity for the three individual Tribal Council officials is more problematical. The Defendants argue that they are entitled to tribal sovereign immunity because they were acting within the scope of their employment and in their official capacities as Tribal Council members during all times relevant to the Complaint. The Plaintiffs, on the other hand, charge that Charles Fox, Peter McGeshick, Jr. and Roger McGeshick, Jr. have no

legitimate official capacities because they seized power "as the result of a coup." Plaintiffs' consolidated Response to Defendants' Motion to Dismiss and Motion for Sanctions at 5.

■ Courts have held that tribal sovereign immunity extends to claims for damages made against tribal officials. *See Burlington Northern Railroad Company v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir.1991), *cert. denied*, 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992); *Weeks Construction, Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668, 670–71 (8th Cir.1986); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985). Therefore, the Plaintiffs' claims for damages from the three individuals in their official capacities must also be dismissed for lack of jurisdiction.

### III. *EXHAUSTION*

■ Sovereign immunity does not, however, bar injunctive or declaratory relief against individual tribal officials who allegedly acted outside the scope of their authority, nor does it bar claims for money damages against the individuals if they were acting outside the scope of their authority or in their personal capacities.[4] *See Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 171, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). If the Plaintiffs are making any such claims, these claims are barred in this court by the doctrine of comity which requires that litigants exhaust their remedies in tribal courts before seeking redress in federal courts unless a federal statute or specific treaty provision mandates otherwise. *See Iowa Mutual Insurance Company v. LaPlante*, 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

■ After studying the leading United States Supreme Court cases on tribal exhaustion, *see National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Iowa Mutual Insurance Company v. LaPlante*, 480 U.S. 9,

107 S.Ct. 971, 94 L.Ed.2d 10 (1987), the Seventh Circuit has explained that the exhaustion doctrine is meant to implement Congress's policy of promoting tribal self-government and self-determination. *See Altheimer & Gray v. Sioux Manufacturing Corporation*, 983 F.2d 803, 815 (7th Cir.), *cert. denied*, 510 U.S. 1019, 114 S.Ct. 621, 126 L.Ed.2d 585 (1993). Thus, a court must first examine the factual circumstances of each case to determine whether the issue in dispute is truly a reservation affair entitled to the exhaustion doctrine. In this case, there is no doubt that the Plaintiffs' claims of mismanagement of the Housing Authority involves a reservation matter. The Plaintiffs believe that a federal court should hear their claims because they are alleging that the Defendants are liable to them under a federal law—the Racketeer Influenced and Corrupt Organizations Act. However, the "interpretation of another jurisdiction's laws ... does not alone foreclose application of the tribal exhaustion rule. A tribal court, presumably, is as competent to interpret federal law as it is state law." *Id.* at 814.

■ The Plaintiffs allege that "demand of the Tribal court would be futile ... the Tribal court does not regularly meet or render decisions and is staffed by Fred Ackley against whom the Housing authority brought suit in small claims court in 1998." Complaint at ¶ 10. On the basis of this thin record, however, this court cannot say that the judges of the Tribal Court will not act independently of the Defendants and the other members of the Tribal Council. *Cf. Janis v. Wilson*, 521 F.2d 724, 728 (8th Cir.1975); *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140, 1147 (8th Cir.1973). *See also LaPlante*, 480 U.S. at 19, 107 S.Ct. 971 ("alleged incompetence of tribal courts is not among the exceptions to the exhaustion requirement...."). Thus, the court concludes that the claims that are not barred for lack of jurisdiction by the doctrine of tribal

---

**4.** The Complaint indicates, although it does not state, that Charles Fox, Peer McGeshick,

Jr. and Roger McGeshick, Jr. are being sued in their official capacities.

sovereign immunity are barred upon principles of comity by the doctrine of tribal exhaustion. Consequently, this action must be dismissed.

### ORDER

Accordingly, the court **ORDERS** that the "Defendants' Motion to Dismiss" (filed July 14, 1998) **IS GRANTED IN PART,** as explained above.

**IT IS FURTHER ORDERED** that this action against the Sokaogon Chippewa Tribe, Acting by and through the Sokaogon Chippewa Community Tribal Counsel and Charles Fox, Acting as Chairman of the Tribal Council of the Sokaogon Chippewa Community, Peter McGeshick, Jr., Acting as Vice–President of the Tribal Council of the Sokaogon Chippewa Community, and Roger McGeshick, Jr., Acting as Councilman, **IS DISMISSED** without prejudice for lack of subject matter jurisdiction. This action is dismissed against Defendants Charles Fox, Peter McGeshick, Jr. and Roger McGeshick, Jr., in their individual capacities, for lack of trial court exhaustion.

**IT IS FURTHER ORDERED** that the "Defendants' Motion for Sanctions" (filed August 7, 1998) **IS DENIED.** The Plaintiffs' Complaint is not wholly legally frivolous within the meaning of Federal Rule of Civil Procedure 11.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter a judgment of dismissal as a separate document. *See* Federal Rule of Civil Procedure 58. This judgment shall provide that:

This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

**IT IS ORDERED AND ADJUDGED**

that this action brought by Plaintiffs Sandy Buchanan, Douglas DeWalt, Norbert Polar, Norma Smith, Tina Van Zile, Individually and as Members of the Sokaogon Chippewa Housing Authority, against Defendants Sokaogon Chippewa Tribe, Acting by and Through the Sok-

aogon Chippewa Community Tribal Council, Charles Fox, Acting as Chairman of the Tribal Council of the Sokaogon Chippewa Community, Peter McGeshick, Jr., Acting as Vice–President of the Tribal Council of the Sokaogon Chippewa Community, Roger McGeshick, Jr., Acting as Councilman, is dismissed without prejudice.