# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

—————————

No. 12-6004

—————————

| | | |
|---|---|---|
| In re:  Linda Rose Whitaker | * | |
| | * | |
| Debtor | * | |
| | * | |
| Paul W. Bucher, Trustee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Dakota Finance Corporation | * | |
| | * | |
| Defendant - Appellee | * | |

—————————

No. 12-6005

—————————

| | | |
|---|---|---|
| In re:  Cecil Ray Barth, formerly doing | * | |
| business as Ray Barth Construction; | * | |
| Deanna Joan Barth | * | |
| | * | |
| Debtors | * | |
| | * | |
| Michael Scott Dietz, Trustee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |

Deanna Joan Barth                    *
                                     *
        Defendant                    *
                                     *
The Lower Sioux Indian Community,    *
   in the State of Minnesota         *
                                     *
        Defendant - Appellee         *


_____

No. 12-6006

_____


In re:  Morris Jerome Pendleton, Sr.;    *
Constance Louise Pendleton, also         *
     known as Connie Pendleton           *
                                         *
        Debtors                          *
                                         *
Paul W. Bucher, Trustee                  *
                                         *
        Plaintiff - Appellant            *
                                         *   Appeal from the United States
             v.                          *   Bankruptcy Court for the
                                         *   District of Minnesota
The Lower Sioux Indian Community,        *
   in the State of Minnesota             *
                                         *
        Defendant - Appellee             *
                                         *
Morris Jerome Pendleton, Sr.             *
                                         *
        Defendant                        *

2

_____

No. 12-6007

_____

In re:  Linda Rose Whitaker            *
                                       *
        Debtor                         *
                                       *
Paul W. Bucher, Trustee                *
                                       *   Appeal from the United States
        Plaintiff - Appellant          *   Bankruptcy Court for the
                                       *   District of Minnesota
             v.                        *
                                       *
Linda Rose Whitaker                    *
                                       *
        Defendant                      *
                                       *
The Lower Sioux Indian Community,      *
   in the State of Minnesota           *
                                       *
        Defendant - Appellee           *


_____

Submitted:  June 20, 2012
Filed: July 19, 2012

_____

Before FEDERMAN, VENTERS, and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

These four adversary proceedings involve suits by Chapter 7 bankruptcy trustees against defendants The Lower Sioux Indian Community (the "Tribe") and its "subsidiary," Dakota Finance Corporation. In three of the adversaries, the trustees are pursuing the Tribe and the debtors for turnover of ongoing tribal revenue payments owed to the debtors under the Tribe's ordinances and the Indian Gaming Regulatory Act. In one of the adversaries, the trustee is seeking to avoid a lien asserted by Dakota Finance Corporation on the ongoing revenue payments owed to Debtor Linda Rose Whitaker as being unperfected. Absent the filing of a bankruptcy case, the creditors of these debtors would be prohibited by the Tribe's sovereign immunity from, for example, garnishing those revenues. The issue here is whether the filing of bankruptcy by Tribe members serves to make the debtors' ongoing revenues from the Tribe available to the respective trustees for the benefit of their creditors. The Bankruptcy Court[1] held that both the Tribe and Dakota Finance Corporation are protected by sovereign immunity and dismissed the adversaries as to those parties. The trustees appeal. For the reasons that follow, we affirm.

### *Standard of Review*

We review findings of fact for clear error, and conclusions of law *de novo*.[2] The trustees do not dispute that the Tribe is a federally recognized Indian tribe organized according to Section 16 of the Indian Reorganization Act.[3] As a federally recognized Indian tribe, it enjoys sovereign immunity. The question here is whether Congress abrogated that immunity in the Bankruptcy Code, which is a legal

---

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

[2] *Addison v. Seaver* (*In re Addison*), 540 F.3d 805, 809 (8th Cir. 2008).

[3] *See Brief of Appellants Paul W. Bucher, Trustee, and Michael S. Dietz, Trustee* at 4. *Indian Reorganization Act*, 48 Stat. 984, 25 U.S.C. § 461 *et seq.*

conclusion we review *de novo*.[4]  The question of whether Dakota Finance Corporation is the type of subsidiary which shares the Tribe's immunity is a question of fact which we review for clear error.

## *The Tribe's Sovereign Immunity*

Indian tribes have long been recognized as possessing common law immunity from suit traditionally enjoyed by sovereign powers.[5]  Unlike the immunity of states, which derives from the Eleventh Amendment,[6] the immunity of tribes is a matter of common law,[7] which has been recognized as integral to the sovereignty and self-governance of tribes.[8]  Indian tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities, and whether they were made on or off a reservation or settlement.[9]  "This aspect of tribal sovereignty, like

---

[4]  *See Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir. 1995) (holding that, if the tribe possesses sovereign immunity, then the district court has no jurisdiction, and determinations of jurisdiction are subject to *de novo* review).

[5]  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 512–513, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940)*; Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000).

[6]  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

[7]  *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677.

[8]  *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756-58, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).  *See also Okla. Tax Comm. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991)*.*

[9] *See Kiowa Tribe*, 523 U.S. at 754-55, 118 S.Ct. at 1703 (holding that the tribe was immune from the suit, even though the contract at issue implicated the

all others, is subject to the superior and plenary control of Congress. But without congressional authorization, the Indian Nations are exempt from suit."[10] Abrogation by Congress of sovereign immunity "cannot be implied," but must be "unequivocally expressed"[11] in "explicit legislation."[12]

In *In re National Cattle Congress*,[13] the Honorable Paul J. Kilburg described the law as to abrogation as follows, with which we agree:

> Courts have found abrogation of tribal sovereign immunity in cases where Congress has included "Indian tribes" in definitions of parties who may be sued under specific statutes. *See Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989) (finding congressional intent to abrogate Tribe's sovereign immunity with respect to violations of the Resource Conservation and Recovery Act, [which expressly included "an Indian tribe or authorized tribal organization" in the definition of "municipalities" covered by the Act]); *Osage Tribal Council v. United States Dep't of Labor*, 187 F.3d 1174, 1182 (10th Cir. 1999) (same re Safe Drinking Water Act [which also

---

tribe's off-reservation commercial conduct), *Hagen v. Sisseton-Wahpeton Comm. Coll.*, 205 F.3d 1040 (8th Cir. 2000) (holding that sovereign immunity extended to a community college which was chartered, funded, and controlled by the tribe).

[10] *Santa Clara Pueblo*, 436 U.S. at 59, 98 S.Ct. 1670 (internal quotation marks omitted). *See also In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir.1994).

[11] *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670.

[12] *See Kiowa Tribe*, 523 U.S. at 759, 118 S.Ct. at 1705. *See also* Patrice H. Kunesh, *Tribal Self-Determination in the Age of Scarcity,* 54 S.D. L. Rev. 398, 398 (2009) ("Tribal sovereignty and the jurisdictional counterpart of tribal sovereign immunity from suit are the bedrock principles of tribal self-determination.").

[13] 247 B.R. 259 (Bankr. N.D. Iowa 2000).

included "Indian Tribes" in the definition of "municipalities" covered by the Act]). "Where the language of a jurisdictional grant is unambiguous as to its application to Indian tribes, no more is needed to satisfy the Santa Clara requirement than that Congress unequivocally state its intent." *Osage Tribal Council*, 187 F.3d at 1182.

Where the language of a federal statute does not include "Indian tribes" in definitions of parties subject to suit or does not specifically assert jurisdiction over "Indian tribes", courts find the statute insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity. *See Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357–58 (2d Cir. 2000) (holding Indian tribe immune from suit under the Copyright Act); *Florida Paraplegic* [*Ass'n. Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1131 (11th Cir. 1999)] (stating that because Congress made no specific reference to Tribes anywhere in the ADA, tribal immunity is not abrogated; suit under ADA dismissed). A Congressional abrogation of tribal immunity cannot be implied. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670.[14]

In bankruptcy cases, Congress's abrogation of sovereign immunity is found in § 106(a) of the Bankruptcy Code. Thus, the issue here is whether § 106(a) evinces Congress's unequivocal intent to abrogate the sovereign immunity of Indian tribes by explicit legislation. Section 106(a) states in relevant part as follows:

§ 106. Waiver of sovereign immunity

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a *governmental unit* to the extent set forth in this section with respect to . . .

(1) [Several enumerated sections of the Bankruptcy Code, including § 542 relating to turnover of estate assets, and § 544 relating to avoidance of liens.]

---

[14] 247 B.R. at 267.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.[15]

As seen above, courts have found abrogation where Congress has included "Indian tribes" in the definition of the parties that may be sued under a statute. Here, the statute does not mention "Indian tribes" specifically, but instead abrogates immunity as to "governmental units," which are defined in § 101(27) as follows:

(27) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; *or other foreign or domestic government*.[16]

The issue here, simply put, is whether, by enacting § 106(a) of the Bankruptcy Code, Congress unequivocally expressed its intent to abrogate the sovereign immunity of Indian tribes, in explicit legislation, by providing for such abrogation as to "other foreign or domestic governments."

A leading case holding that § 106 did abrogate sovereign immunity as to Indian tribes is *Krystal Energy Company v. Navajo Nation*.[17] There, the Ninth Circuit reasoned as follows:

Indian tribes are certainly governments, whether considered foreign or domestic (and, logically, there is no other form of government outside

---

[15]  11 U.S.C. § 106(a) (emphasis added).

[16]  11 U.S.C. § 101(27) (emphasis added).

[17]  357 F.3d 1055 (9th Cir. 2004), *cert. denied, Navaho Nation v. Krystal Energy Co., Inc.*, 543 U.S. 871, 125 S.Ct. 99, 160 L.Ed.2d 118 (2004).

the foreign/domestic dichotomy, unless one entertains the possibility of extra-terrestrial states).

The Supreme Court has recognized that Indian tribes are "'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Potawatomi*, 498 U.S. at 509, 111 S.Ct. 905 (citing *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)); *see also, Blatchford v. Native Village of Noatak*, 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are "domestic" sovereigns). So the category "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.[18]

The trustees cite to two lower courts outside of the Ninth Circuit that have agreed with this analysis.[19] The logic of *Krystal*, as followed by those cases, is that: (1) the Supreme Court has referred to Indian tribes as "domestic dependent nations"; (2) Congress enacted §§ 106 and 101(27) of the Bankruptcy Code with that reference in mind; (3) Congress abrogated sovereign immunity as to states, foreign states, and

---

[18]  357 F.3d at 1057-58.

[19] *See In re Platinum Oil Properties, LLC,* 465 B.R. 621, 642-44 (Bankr. D. N.M. 2011); *Turning Stone Casino v. Vianese* (*In re Vianese*), 195 B.R. 572, 575-76 (Bankr. N.D. N.Y. 1995). The trustees also cite *In re Sandmar Corp.*, 12 B.R. 910, 916 (Bankr. D. N.M. 1981), but that case does not deal with § 106(c). There, the tribe asserted that it *was* a "governmental entity" to which § 362(b)(4) of the 1978 Code applied to exempt its use of its police and regulatory powers as a governmental entity from the automatic stay. The Court "grant[ed] that the Tribe [was] a governmental entity," but held that the eviction of the debtor was not an exercise of the tribe's police or regulatory powers. They also cite a dissenting opinion in *In re Mayes*, 294 B.R. 146, 157–60 (B.A.P. 10th Cir. 2003) (McFeeley, J., dissenting), taking the position that "[t]he fact that Indian tribes have been referred to as 'domestic dependent nations' incorporates them into 11 U.S.C. § 106.").

other foreign or domestic governments; and, therefore, (4) Congress must have intended to include Indian tribes as "other foreign or domestic governments."

Granted, Indian tribes can and do provide certain governmental functions for their members. But the several steps needed to justify the holding in these cases is far from an unequivocal expression of Congressional intent to abrogate the tribes' immunity, stated in explicit legislation.[20] While resort to legislative history should not be needed to conclude that a statute explicitly abrogates immunity, the cases relied on by the trustees do not refer to any legislative history indicating that Congress even considered the effect of § 106 on tribes' sovereign immunity. Indeed, despite the fact that *Santa Clara Pueblo* was decided six months before the 1978 Bankruptcy Code was enacted and held that abrogation of tribal sovereign immunity must be "unequivocally expressed," Congress did not mention Indian tribes in the statute. Nor did it do so in 1994 when it amended § 106 to clarify its intent with respect to the sovereign immunity of states following *Hoffman v. Connecticut Department of Income Maintenance*[21] and *United States v. Nordic Village, Inc.*,[22] which held that former § 106(c) did not state with sufficient clarity a congressional intent to abrogate the sovereign immunity of the states and the federal government.[23]

---

[20] *See Ute Distribution Corp. v. Ute Indian Tribe,* 149 F.3d 1260, 1265-66 (10th Cir.1998) (holding that, after *Santa Clara Pueblo*, abrogation of tribal sovereign immunity cannot be found if the court must "glean some congressional intent to [abrogate] immunity based on an examination of the structure or purpose of the statute."). *See also* Greggory W. Dalton, *A Failure of Expression: How the Provisions of the U.S. Bankruptcy Code Fail to Abrogate Tribal Sovereign Immunity*, 81 Wash. L. Rev. 645 n. 29 (2006).

[21] 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

[22] 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

[23] *See* H.R. Rep. 103-835, Section-By-Section Analysis § 113; 2 Collier on Bankruptcy ¶ 106.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Indeed, the House Report for the Bankruptcy Reform Act of 1994 refers specifically to the sovereign immunity of the "States and Federal Government," neither of which could even remotely be interpreted to include Indian tribes.

The trustees' argument based on *Krystal* also fails because the cases on which *Krystal* was based do not, in fact, support its holding. In *Cherokee Nation v. Georgia*,[24] the case in which the Supreme Court first described an Indian tribe as a "domestic dependent nation," the issue was whether the Court had jurisdiction to hear a suit by the Cherokee Nation to enjoin the State of Georgia from exercising authority over its lands in various ways. Article III of the Constitution gives the courts jurisdiction over suits "between the State or the citizens thereof, and foreign states, citizens, or subjects." In considering whether the Cherokee Nation was a foreign state, Chief Justice Marshall pointed out that while the tribe had a treaty with the United States, as a foreign government might, their lands were within the boundaries of the United States, so they were not a foreign state. But unlike, say Georgia, the tribe was not a domestic state either. Instead, Chief Justice Marshall for the Court held that "the relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else."[25] For support, he pointed out that the Commerce Clause empowers Congress to "regulate commerce with foreign nations, and among the several states, and with the Indian tribes." "In this clause, they are as clearly contradistinguished by a name appropriate to themselves from foreign nations as from the several States composing the union."[26] After stating that the relationship of Indian tribes to the United States is somewhat akin to that of a guardian and ward, he determined that rather than being domestic states or foreign nations, they should

---

[24] 30 U.S. 1 (1831).

[25] *Id.* at 16.

[26] *Id.* at 18.

be treated as "domestic dependent nations."[27] Therefore, the Court in that case did not have jurisdiction over their suit. Chief Justice Marshall's conclusion, rather than supporting the trustees' position here, demonstrates that Indian tribes are neither foreign nor domestic governments within the meaning of the Bankruptcy Code definition of "governmental unit."

The later cases cited by the Ninth Circuit in *Krystal Energy* add nothing to the discussion. In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,[28] the issue was whether a tribe waived its sovereign immunity by filing suit to enjoin a state from collecting taxes on cigarettes sold on Indian lands. The Supreme Court held that the tribe did not waive its immunity, so the state could not collect the tax from members of the tribe for such sales, but could as to sales to nonmembers. Among other things, the state had argued that the Court should construe more narrowly, or abandon altogether, the doctrine of tribal sovereign immunity because "tribal business activities such as cigarette sales are now so detached from traditional tribal interests that the tribal-sovereignty doctrine no longer makes sense in this context."[29] Further, the state argued, "the sovereignty doctrine . . . should be limited to the tribal courts and the internal affairs of tribal government, because no purpose is served by insulating tribal business ventures from the authority of the states to administer their laws."[30]

---

[27] *Id.* at 17. *See also Native Am. Church of N. Am. v. Navajo Tribal Council*, 272 F.2d 131, 134 (10th Cir. 1959) ("Indian tribes are not states. They have a status higher than that of states. They are subordinate and dependent nations possessed of all powers [except] to the extent that they have expressly been required to surrender them by the superior sovereign, the United States.").

[28] 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).

[29] *Id.* at 510, 111 S.Ct. at 909.

[30] *Id.* at 510, 111 S.Ct. at 909-10.

In rejecting that argument, the Supreme Court pointed out that Congress in various statutes has acted to promote the "goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development."[31]  "Under these circumstances," the Court held, "we are not disposed to modify the long-established principle of tribal sovereign immunity."[32]

Finally, the Ninth Circuit in *Krystal* relied on the Supreme Court's decision in *Blatchford v. Native Village of Noatak*[33] for the proposition that, like states, Indian tribes are "domestic," as opposed to "foreign," sovereigns.  While the Supreme Court did say in that case that Indian tribes are a form of "domestic sovereign,"[34] it is noteworthy that the Supreme Court did not refer to Indian tribes as "domestic governments," which is the phrase used in § 101(27).  Indeed, while the Supreme Court has referred to Indian tribes as "sovereigns," "nations," and even "distinct, independent political communities, retaining their original natural rights,"[35] the trustees cite no case in which the Supreme Court has referred to an Indian tribe as a "government" of any sort – domestic, foreign, or otherwise.  The apparent care taken by the Supreme Court *not* to refer to Indian tribes as "governments" reinforces Justice Marshall's pronouncement in *Cherokee Nation* that Indian tribes are exceptionally unique, unlike any other form of sovereign, which is why he coined the phrase "domestic dependent nation."  If the Supreme Court considered an Indian tribe to be a "government," it would not go to such great lengths to avoid saying so.

---

[31]  *Id.* at 510, 111 S.Ct. at 910 (*citing California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216, 107 S.Ct. 1083, 1092 (1987)).

[32]  *Id.*

[33]  501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991).

[34]  *Id.* at 782, 111 S.Ct. at 2582-83.

[35]  *See Worcester v. State of Georgia*, 31 U.S. 515, 1832 WL 3389 (1832).

13

In sum, the cases relied on by *Krystal* and the trustees here do not support the proposition that Congress can express its intent to abrogate sovereign immunity as to Indian tribes without specifically saying so. Instead, courts have been directed to adhere to the general principle that statutes are to be interpreted to the benefit of Indian tribes.[36] Further, since the Supreme Court does not refer to Indian tribes as "governments," a statute which abrogates sovereign immunity as to domestic governments should not be interpreted to refer to such tribes. We hold that in enacting § 106, Congress did not unequivocally express its intent by enacting legislation explicitly abrogating the sovereign immunity of tribes.[37] As the Court in *In re National Cattle Congress* held, holding otherwise requires an inference which is inappropriate in this analysis.[38] The Tribes are, therefore, protected from suit here by their sovereign immunity.

## *Dakota Finance Corporation's Sovereign Immunity*

The next question is whether Dakota Finance Corporation ("DFC") is likewise protected from these suits by the Tribe's immunity.

---

[36] *See, e.g., Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985); *McClanahan v. State Tax Comm'n of Arizona,* 411 U.S. 164, 174, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912). *See also* Greggory W. Dalton, *A Failure of Expression: How the Provisions of the U.S. Bankruptcy Code Fail to Abrogate Tribal Sovereign Immunity*, 81 Wash. L. Rev. 645, 649 (2006).

[37] *Accord In re National Cattle Congress,* 247 B.R. at 267. *See also In re Mayes*, 294 B.R. 145, 148 n. 10 (B.A.P. 10th Cir. 2003) (stating, without reaching the issue, that abrogation probably did not apply to Indian tribes because they are not "domestic governments.").

[38] 247 B.R. at 267.

Tribal sovereign immunity extends to arms and agencies of Indian tribes.[39] The trustees argue that, since the action against DFC is purely economic, it has no impact on the Tribe's right or ability to self-govern and, therefore, the DFC is not immune from suit. The trustees rely on Minnesota state court cases holding that if an Indian tribe mixes its use of governmental and corporate authority, it may waive or be prevented from claiming immunity.[40] But in *Prairie Island Indian Community*, for example, the Court held that the Indian tribe waived its sovereign immunity because it was acting under a federal corporate charter which expressly waived such immunity.[41] That is not the situation here. Absent waiver, the Supreme Court has made clear that immunity does apply to commercial activities of the tribe.[42] "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation."[43] Indeed, the Eighth Circuit has held that that immunity is thought to

---

[39] *Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040, 1043 (8th Cir. 2000) (holding that tribal immunity extended to a community college which was chartered, funded, and controlled by the tribe); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 583 (8th Cir. 1988) (tribal housing authority established by tribal counsel is a tribal agency entitled to sovereign immunity); *Weeks Constr., Inc., v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 670-71 (8th Cir. 1986) (tribal housing authority created by tribal ordinance to develop and administer housing projects on the reservation was a tribal agency entitled to sovereign immunity).

[40] *Gavle v. Little Six, Inc.,* 555 N.W.2d 284, 294 (Minn.1996); *Dacotah Properties-Richfield, Inc. v. Prairie Island Indian Cmty.*, 520 N.W.2d 167, 170 (Minn. Ct. App. 1994).

[41] *Dacotah Properties-Richfield*, 520 N.W.2d at 172-173.

[42] *See, e.g., Kiowa Tribe*, 523 U.S. at 760.

[43] *Id.* (cataloging prior decisions). *See also Klammer v. Lower Sioux Convenience Store*, 535 N.W.2d 379, 383 (Minn. App. 1995) (distinguishing the

15

be "necessary to promote the federal policies of tribal self-determination, economic development, and cultural autonomy."[44]

Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity.[45] As the Ninth Circuit has noted, immunity for subordinate economic entities "directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general."[46] While the Eighth Circuit has not established a set of factors to use in determining whether a related organization is sufficiently close to the tribe to assert its sovereign immunity,[47] the most commonly accepted test is the "subordinate economic entity" test, which was articulated by the Tenth Circuit Court of Appeals as relying on the following factors:

1)      The method of creation of the economic entities;

2)      Their purpose;

---

Lower Sioux from the Prairie Island tribe in *Dacotah Properties*).

[44] *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1378 (8th Cir. 1985).

[45] *See Hagen v. Sisseton-Wahpeton,* 205 F.3d at 1043.

[46] *Allen v. Gold Country Casino,* 464 F.3d 1044, 1047 (9th Cir.2006), as quoted in *Breakthrough Mgmt. Group Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

[47] *See J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd.*, ___F. Supp. 2d. ____, 2012 WL 113866 *10 (D. S.D. Jan. 13, 2012) (cataloging cases from several federal and state courts).

3) Their structure, ownership, and management, including the amount of control the tribe has over the entities;

4) The tribe's intent with respect to sharing of its sovereign immunity;

5) The financial relationship between the tribe and the entities;

6) The policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether these policies are served by granting immunity to the economic entities.[48]

The evidence submitted supports DFC's argument that it meets this test.

On May 5, 2010, the Lower Sioux Indian Community Tribal Council adopted Resolution 10-94 clarifying the names of Dakota Futures Inc. and the Dakota Finance Corporation. This resolution clarified that both names have no legal existence apart from Dakota Services Enterprise.

Dakota Services Enterprise ("DSE") was created by Lower Sioux Indian Community Tribal Council Resolution 07-239. DSE (including its various assumed or business names) was created pursuant to Lower Sioux Community law. It is wholly owned by Lower Sioux as a "subordinate economic organization and an arm and instrumentality of the Community" established and doing business under the Community Constitution and exercising governmental powers.

The Lower Sioux's express purpose in establishing DSE was "to fulfill government purposes of generating Community governmental revenues by promoting economic development and self-sufficiency through business development."

---

[48] *Breakthrough Mgmt. Group v. Chukchansi Gold Casino,* 629 F.3d at 1188.

Furthermore, the Community Council clearly expressed in the Articles of Incorporation its intent that DSE be covered by the Community's "sovereign immunity from suit to the same extent that the Community would have such sovereign immunity if it has directly engaged in the activities undertaken by DSE."

Based on the foregoing, we cannot say that the Bankruptcy Court clearly erred in concluding that Dakota Finance Corporation is an arm or agency of the Tribe and that it is entitled to the same immunity from suit to which the Tribe is entitled.

Accordingly, we hold that the Bankruptcy Court did not err in concluding that both the Tribe and Dakota Finance Corporation are protected by sovereign immunity and are, therefore, immune from these suits against them. The orders of the Bankruptcy Court dismissing the adversary proceedings against them are, therefore, AFFIRMED.

———————————